# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| MICHAEL G., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-00102-TWP-DML |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Michael G.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). For the following reasons, the Court **affirms** the decision of the Commissioner.

## I. PROCEDURAL BACKGROUND

On February 20, 2014, Michael G. filed an application for SSI, alleging a disability onset date of April 13, 2012. (Filing No. 13-2 at 12.) His application was initially denied on August 11, 2015, (Filing No. 13-4 at 2), and upon reconsideration on October 15, 2015, (Filing No. 13-4 at 9). Administrative Law Judge William C. Zuber (the "ALJ") conducted a hearing on September 20, 2017, at which Michael G., unrepresented by counsel, and a vocational expert ("VE"), appeared and testified. (Filing No. 13-2 at 43-77.) The ALJ issued a decision on November 30, 2017, concluding that Michael G. was not entitled to receive benefits. (Filing No. 13-2 at 9.) The

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Appeals Council denied review on February 22, 2018. ([Filing No. 13-2 at 2](#).) On March 7, 2018, Michael G. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying his benefits. ([Filing No. 1](#).)

## II. STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[2]; Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning Disability Insurance Benefits and SSI, which are identical in most respects. Cases, as here, may reference the section pertaining to the other type of benefits under the Act. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.945(a)(1). The Court will take care to detail any substantive differences that are applicable to the case but will not always reference the parallel section when there is no substantive difference.

must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.     FACTUAL BACKGROUND

Michael G. was 40 years of age at the time he filed the application under review, (Filing No. 13-5 at 2), alleging he could no longer work due to bipolar disorder, heart problems, diabetes, depression, anxiety, back problems, and neuropathy in his legs and feet, (Filing No. 13-6 at 5). He has completed the tenth grade, with a history of special education, and previously worked in manual labor and as a tow truck driver. (Filing No. 13-6 at 6.)[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Michael G. was not disabled. (Filing No. 13-2 at 33.) At step one, the ALJ found that Michael G. had not engaged in substantial gainful activity[4] since February 20, 2014, the application date.[5] (Filing No. 13-2 at 15.) At step two, the ALJ found that

---

[3] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

[5] SSI is not compensable before the application date. 20 C.F.R. § 416.335.

4

he had the following severe impairments: degenerative changes of the lumbar spine status post fusion surgery, obesity, diabetes mellitus type II with peripheral neuropathy, depression, anxiety, and borderline intellectual functioning. *Id*. At step three, the ALJ found that Michael G. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 13-2 at 16.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except: the claimant requires allowance of an option to sit or stand every 30-45 minutes but is able to stand for 30-45 minutes at a time and sit for 30-45 minutes at a time; the claimant is able to use his hands frequently for handling, grasping, fingering and feeling, perform occasional stooping, crouching, kneeling, crawling and climbing of ramps and stairs, and use his feet occasionally to operate foot controls but is never able to climb ladders, ropes or scaffolding; the claimant is able to sustain concentration, persistent and pace for periods of 2 hours at a time to perform work involving simple, routine, 1-3 step tasks subject to any changes in work routine or environment being rare and gradually introduced, having occasional contact with supervisors and co-workers but no contact with the general public, no fast-paced quota-driven tasks, and no work tasks that require reading.

(Filing No. 13-2 at 21.) At step four, the ALJ concluded that Michael G. did not have any past relevant work to evaluate. (Filing No. 13-2 at 32.) At step five, the ALJ concluded, with the assistance of the VE's testimony and considering Michael G.'s RFC, age, education, and past work, that there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations such as a hand polisher, trimmer, and garment sorter. (Filing No. 13-2 at 32-33.)

## IV. DISCUSSION

Michael G. proceeds with his appeal without representation and has submitted various documents with the Court, including motions, letters of support from his mother-in-law, letters from his treating providers, medical records, his wife's Family and Medical Leave Act ("FMLA")

certification to her employer, and an incomplete notice concerning a state benefit determination. (*See* Filing No. 22-1; Filing No. 24-1; Filing No. 28-1; Filing No. 33-1; Filing No. 37; Filing No. 38; Filing No. 39; Filing No. 40; Filing No. 41; Filing No. 42; Filing No. 43.) Because Michael G. proceeds *pro se* in this action, the Court will liberally construe his pleadings and consider any issues raised by the submitted documents to the extent the Court finds it necessary to resolve the appeal. *See, e.g., Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir. 2001).

## A. Previous Decisions

Michael G. asserts that his rights have been violated because the SSA has not awarded him benefits despite the fact he was previously awarded disability and still has all the same mental and physical impairments. (Filing No. 22-1 at 8.)

Michael G. has filed several applications for benefits in the past, including in 2006, 2011, and 2012. (Filing No. 13-3 at 30.) Michael G. submitted a prior determination finding him disabled as of July 2006 due to chronic brain syndrome and an affective mood disorder. (Filing No. 33-1 at 1.) He was awarded benefits on a past application, but the benefits were terminated following an incarceration for shoplifting. (Filing No. 13-7 at 74.)

The SSA is not required to consider any past decision, favorable or unfavorable, that covered a different period. The SSA's policy provides for *de novo* review of a claim involving a period of time that has not been adjudicated. The current claim involves a period that was not covered by any previous decision. The SSA has issued clear guidance regarding how a prior SSA decision may affect a later decision:

> Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims. However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA

considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period.

*Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act.* AR 98-4(6) (S.S.A. June 1, 1998), 1998 WL 283902, at *2 (emphasis added). In other words, the SSA considers the application anew, rather than being beholden in any way to the outcome of an older decision. The Seventh Circuit recently explained it was not aware of any authority "that requires an ALJ to use the same RFC that a different ALJ used in denying the benefits for a prior period." *Penrod on behalf of Penrod v. Berryhill*, 900 F.3d 474, 477 (7th Cir. 2018). The ALJ was not required to credit that Michael G. was disabled because a past claim had found him to be disabled any more so than the ALJ was required to find him not disabled because a prior decision had found unfavorably for Michael G. (*See* Filing No. 13-3 at 7 (the most recent unfavorable decision before the current application, dated February 20, 2014.).)

During the hearing, Michael G. presented the same argument to the ALJ, asking how he could be denied benefits when he had been approved in the past. (Filing No. 13-2 at 71.) The ALJ accurately explained the governing standard, that he was limited to evaluating the evidence after the most recent decision according to the current law. (Filing No. 13-2 at 72.) The Court finds that the ALJ applied the correct standard.

**B.** **Combined Impairments**

In a related argument, Michael G. asserts that he not only has all the same impairments he had when he was previously awarded benefits, that "now he has more medical and mental diagnoses that he did when he received social security befor[e]." (Filing No. 22-1 at 8.) Michael

7

G. lists numerous combined impairments or conditions, including chronic brain syndrome, affective mood disorders, hypertension, arterial blockage in his neck, diabetes, urinary incontinence, neuropathy, history of back surgery, an abdominal hernia, side effects from medication, rectal bleeding, poor vision, chronic obstructive pulmonary disease, reading, writing, and communication impairments, and generalized anxiety and stress. (Filing No. 22-1 at 8-12.)

The Court finds that the ALJ sufficiently evaluated the combined impairments that were established by the relevant evidence pertaining to the current period at issue. The ALJ has a duty to consider the impairments and functional effects of those impairments on a claimant's RFC that the evidence of record establishes. *Clifford v. Apfel*, 227 F.3d 863, 872-74 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citing 20 C.F.R. § 404.1512(a) (Commissioner "will consider only impairment(s) you say you have or about which we receive evidence.")). The Seventh Circuit has explained that "[c]onditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment. A person can be depressed, anxious, and obese yet still perform full-time work." *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). While Michael G. has submitted evidence that he has numerous health conditions, he was not demonstrated that there were functional limitations as a result of those conditions that were not properly evaluated by the ALJ. The Court's own review of the evidence does not find functional limitations that were not properly evaluated by the ALJ. The Court will discuss any significant evidence of functional limitations and how the ALJ properly evaluated the evidence below.

**C.** **Mental Impairments**

Michael G. contends that he was awarded benefits in the past "for his mental health," (Filing No. 28-1 at 4), and that "his stress and depression has gotten much worse over the years,"

(Filing No. 33-1 at 10). His mother-in-law, writing on his behalf, takes issue with the Commissioner's response, which "stated that at one time Michael[']s depression had got[ten] better." (*See* Filing No. 38 at 1-2.)

The Court finds that the ALJ's conclusion that Michael G.'s mental health functioning had improved with treatment was supported by substantial evidence. A mental condition that is treatable and under control is not a valid basis for entitlement to benefits. *Prochaska*, 454 F.3d at 737. As explained above, according to the standard of review, the Court is not able to weigh the evidence and reach its own conclusions. The Court is limited to evaluating whether there was enough evidence to say that it was reasonable for the ALJ to reach a relevant conclusion based on the evidence that was before him. The ALJ confronted evidence that Michael G.'s treating psychiatrist, Rifaat S. El-Mallakh, M.D., had initially assessed Michael G. to have "marked depression" in April 2015 when he began treatment. (Filing No. 13-2 at 17 (citing Filing No. 13-7 at 69).) The ALJ explained that after Michael G. completed participation in a blind, placebo medication study and was definitively prescribed medications, he reported improvement and "Dr. El-Mallakh consistently characterized the claimant's impairment as being of 'moderate' severity from July 2015 through December 2016." (Filing No. 13-2 at 17 (citations omitted).) The ALJ assessed Michael G. to have moderate limitations from his mental health impairments. (Filing No. 13-2 at 18-21.) Michael G. reported to his treating provider that his anxiety and depression "symptoms improved" and that he denied homicidal and suicidal ideations and was "able to maintain relationships" with others. (Filing No. 13-7 at 232.) On July 14, 2016, Dr. El-Mallakh noted during a brief period that Michael G. had been unable to refill his prescriptions that he reported "when he was taking medication he was doing well but [had] been feeling depressed at times due to external stressors." (Filing No. 13-8 at 38.) A mental status examination at the time

9

showed Michael G. to have an appropriate, well-groomed appearance, relaxed, cooperative behavior, appropriate eye contact, regular speech with clear, fluent articulation, goal directed thought process, logical thought content, normal perception, oriented cognition, intact immediate and short-term memory, attentive and focused attention, and good insight and judgment. ([Filing No. 13-8 at 39-40](#).) Dr. El-Mallakh's diagnostic assessment was "Bipolar I disorder, most recent episode depressed, moderate." ([Filing No. 13-8 at 40](#).) The evidence reasonably supported that Michael G.'s mental health impairment had at one time responded well to medication and improved to the point his functioning was moderately limited.

The evidence showing moderate limitations was also consistent with the assessments of the state agency reviewing consultants, ([Filing No. 13-3 at 42](#); [Filing No. 13-3 at 63](#)) and the consultative examiner, ([Filing No. 13-7 at 88-89](#) (despite evidence on the examination of July 23, 2015 that Michael G.'s attention was distractible and concentration scattered, the examiner assessed no more than moderate limitations, defined as "still able to function satisfactorily.")). Accordingly, the Court does not find reversable error with the ALJ's mental health assessment.

**D.     Noncompliance and Credibility**

The ALJ also confronted evidence showing that Michael G.'s diabetes was poorly controlled according to laboratory testing and that examinations had shown decreased sensation in his feet with some "callous/corn formation, and mild acquired hammer toes." ([Filing No. 13-2 at 23](#).) The ALJ also gave Michael G. "the significant benefit of the doubt in finding specific limitations in the use of the hands for frequent handling, grasping, fingering and feeling based on the claimant's established history of neuropathy, poor diabetic control and recent evaluation for complaints of wrist pain." ([Filing No. 13-2 at 24](#).)

However, the ALJ did not find Michael G.'s statements "concerning the intensity, persistence and limiting effects of [his] symptoms" to be completely credible. ([Filing No. 13-2 at 23](#).) As noted above, the Court must accord the ALJ's credibility determination considerable deference, overturning it only if it is patently wrong.

Here, the ALJ noted that despite the evidence of poor control of Michael G.'s diabetes, there was no evidence of acute complications requiring urgent medical attention or hospitalizations during the period at issue. ([Filing No. 13-2 at 25](#).) And despite evidence of decreased sensation in his feet, there was "no apparent corroboration in the medical evidence for the claimant's alleged need for use of any cane, scooter, wheelchair or other assistive devices for ambulation." ([Filing No. 13-2 at 26](#); *see* [Filing No. 13-2 at 64](#) (Michael G. testified he was prescribed a scooter and had "walkers and canes and stuff.").)

The ALJ also noted that despite complaints of worsening pain "24/7" during a neurosurgical evaluation, the specialist recorded "only normal findings" on examination, including intact motor function and gait. ([Filing No. 13-2 at 25](#) (citing [Filing No. 13-7 at 34-36](#)).) The Court's review of the evidence does not show any objective evidence that Michael G.'s gait was effected by his symptoms of neuropathy or related to his other physical impairments.

Moreover, the ALJ explained that all of Michael G.'s treating providers for his diabetes had noted noncompliance with treatment recommendations, specifically with dietary habits and drinking Mountain Dew. ([Filing No. 13-2 at 25](#).) An ALJ can reasonably determine that a claimant's allegations are not credible when the claimant fails to follow treatment recommendations. *See Dixon v. Massanari*, 270 F.3d 1171, 1179 (7th Cir. 2001) (discounting evidence of elevated blood sugar levels, in part, because of the claimant's failure to follow dietary recommendations); *see also Craft*, 539 F.3d at 679 (noting that "failure to follow a treatment plan

11

can support an adverse credibility finding where the claimant does not have a good reason for the failure"). Michael G.'s mother-in-law contends that "[w]hen Michal started drinking Mt. Dew years ago he did not know it would cause him to become a diabetic. After becoming diabetic Michael quit drinking regular Mt. Dew and began drinking diet Mt. Dew." (Filing No. 38 at 1.) The record supports the ALJ's reading of the evidence rather than Michael G.'s mother-in-law's contention. On October 22, 2014, the record indicated Michael G. "[d]rinks 4- regular Mountain Dew[s] daily." (Filing No. 13-7 at 20.) "Diet modification discussed at length – [a]dvised to stop sodas." (Filing No. 13-7 at 22.) On September 23, 2015, he was "still drinking Mt. Dew." (Filing No. 13-7 at 198.) On September 27, 2016, Michael G. "said that he does not eat a bunch of sweets but does drink a lot of coke." (Filing No. 13-8 at 105.) On February 17, 2017, he "drinks 4 to 5 Mountain Dew[s] daily and water makes him thirsty. He can drink cold water in a water bottle. He can drink tea but it has to be sweetened." (Filing No. 13-8 at 115.) His treating provider stated the following:

> I explained to him how drinking Mountain Dew could cause his sugar to go up and weight gain. I suggested [to] him to try to drink cold water or iced tea with Stavia.
>
> I discussed at length with him that [I] don't think, in my opinion, that he needs FMLA. He has many correctable factors that are in his control. I could assist him with Insulin adjustment and have provided him with recommendations about his dietary habits, [i.e.] minimizing Mountain Dew.
>
> At this point, respectfully, I don't see any limitations for him from the diabetes mellitus standpoint. I don't feel comfortable filling FMLA out at this time. For his other comorbidities, he will need to discuss with his other providers. He agreed.

(Filing No. 13-8 at 117.) On July 11, 2017, the records continued to show—despite repeated recommendations to the contrary—that Michael G. "drinks about 3 to 4 regular Mountain Dew[s] daily." (Filing No. 13-8 at 127.)

Michael G.'s subjective statements concerning his functional limitation were sufficiently undermined by specific evidence of record that he failed to follow treatment recommendations for his most serious impairment, a lack of corroboration of any use of ambulatory aids, and objective clinical signs that did not correspond with his alleged symptoms. As the Seventh Circuit explained in *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018), *reh'g denied* (Dec. 18, 2018), "the ALJ's credibility determination here was not 'patently wrong' because the ALJ found Hall 'not fully credible' for many specific reasons supported by the evidence." *Id*. (citing *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). Accordingly, the Court does not find any basis to overturn the ALJ's credibility determination.

### E. Supportive Opinion Evidence

The ALJ confronted the numerous treating opinions that were supportive of Michael G.'s claim. (*See* Filing No. 13-2 at 30-31.) The ALJ accurately described that a treating opinion must be "well-supported and not internally inconsistent with other pertinent clinical evidence. However, speculation as to employability carries no special significance, and the ultimate determination of disability is specifically reserved to the Commissioner pursuant to SSR 96-5p." (Filing No. 13-2 at 30.) The Seventh Circuit has consistently explained that a claimant "is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability." *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. § 404.1527(e)).

Many of the supportive opinions were no more than conclusive assertions of disability. (*See, e.g.,* Filing No. 13-8 at 60 (Stephanie M. Swincher, A.P.R.N., stated "[t]he patient is

13

permanently and totally disabled and will never be gainfully employed.").) The ALJ had no duty to give any significant weight to the numerous conclusive statements.

The Court also finds that the ALJ provided good reasons for discounting the weight of the treating opinions that offered more specific statements about Michael G.'s functioning. The regulations instruct the ALJ to consider "consistency" with "the record as whole" when determining the weight that should be given a medical opinion. 20 C.F.R § 416.927(c)(4). The regulations also instruct the ALJ to consider the "supportability" of a medical opinion, which refers to the relevant evidence presented by the source to support the opinion, including "particularly medical signs and laboratory findings." 20 C.F.R. § 416.927(c)(3). The Seventh Circuit has held that a treating source statement can be discounted if not properly explained and the treating notes do not provide any further clarification or support with objective signs. *See Schaaf*, 602 F.3d at 875. The ALJ explained that Ms. Swincher's "several opinions are not supported by the objective contents of Ms. Swincher's own treatment records" and "the weight of the total medical and other evidence from all sources received at the hearing level." (Filing No. 13-2 at 30.) The ALJ explained that the opinions of Stacy M. Garcia, A.R.N.P., were discounted for the same reasons. *Id*. Dr. El-Mallakh's opinions were also discounted based on the consistency and supportability factors. (Filing No. 13-2 at 30-31.)

Without elaborating on every treating source statement, the Court's review of the evidence does not find any reason to disturb the ALJ's weighing of the opinion evidence. The evidence of record supported the ALJ's contention that the various opinions were not consistent with the record as whole or the respective treating source's own examination findings. For example, Ms. Garcia provided a letter of support on July 8, 2016, that Michael G. was "unable to carry out routine, full-time employment [due to] the extent of his chronic conditions." (Filing No. 13-7 at 229.)

14

However, her examination of Michael G. the previous day was completely normal, including ambulation, judgment, mood and affect, recent and remote memory, lung functioning, motor strength and tone, movement of all extremities, and gait and station. (Filing No. 13-7 at 233.) The ALJ also provided specific references to the record to support his findings. For example, the ALJ noted that Dr. El-Mallakh provided a letter of support on September 20, 2017, concerning Michael G.:

> He is unable to work due to his psychiatric and medical problems. Specifically, his ability to concentrate, and perform intellectual tasks is limited and creates problems with any task that requires cognitive ability. Furthermore, his ability to perform physical work is very limited due to pain and weakness of his spine. He cannot maintain either intellectual or physical activities for any length of time.

(Filing No. 13-8 at 173.) However, Dr. El-Mallakh specifically supported the opinion by stating that Michael G. had "several herniated discs." *Id*. The ALJ pointed out that none of the imaging of Michael G.'s spine was consistent with Dr. El-Mallakh's characterization. (Filing No. 13-2 at 31 (citing *e.g.*, Filing No. 13-7 at 24 (MRI showed a concentric disc bulge at L3-4, but no herniation was noted)).) The psychiatrist's opinion was also inconsistent with his own mental status examinations that showed improvement—including even when Michael G.'s medications were interrupted—indicating he had an appropriate, well-groomed appearance, relaxed, cooperative behavior, appropriate eye contact, regular speech with clear, fluent articulation, goal directed thought process, logical thought content, normal perception, oriented cognition, intact immediate and short-term memory, attentive and focused attention, and good insight and judgment. (*See* Filing No. 13-8 at 39-40 (July 14, 2016); Filing No. 13-8 at 36-37 (October 6, 2016)).

Accordingly, the Court does not find error based on the ALJ's treatment of the opinion evidence.

## F. Evidence Submitted to the Court

Similarly, the Court will not detail every piece of evidence that Michael G. has submitted along with his judicial review appeal. Except where the evidence is duplicative of evidence that was admitted and exhibited by the ALJ, Michael G. did not submit the evidence to the SSA that he now attaches to his federal appeal (for example, along with his appeal to the Appeal Council). The Seventh Circuit has explained that "[a] reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005) (quoting 42 U.S.C. § 405(g) (sentence six)). "Evidence is 'new' if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Schmidt*, 395 F.3d at 742 (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). "New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). "Thus, new evidence is material only if it is relevant to the claimant's condition 'during the relevant time period encompassed by the disability application under review.'" *Schmidt*, 395 F.3d at 742 (quoting *Kapusta v. Sullivan,* 900 F.2d 94, 97 (7th Cir. 1990)). Furthermore, cumulative evidence is not considered new under the Act. *Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988).

Most of the treatment evidence that Michael G. has submitted along with his federal appeal pertain to his functioning after the period at issue covered by the ALJ's decision. (*See e.g.*, Filing No. 22-1 at 5 (letter from Ms. Garcia dated July 3, 2018 that Michael G. now requires an emotional

support animal for daily functioning related to his mental health).) The evidence of his functioning that post-dates the ALJ's decision is not relevant to the period under review.

      Michael G. has also submitted several documents that are cumulative of the evidence that was specifically considered by the ALJ. For example, he submitted: (1) a conclusive statement of disability like the ones discounted by the ALJ and referencing the conditions that were specifically evaluated in the decision, (*see* [Filing No. 24-1 at 2](#) ("unable to obtain/retain gainful employment due to chronic conditions including back pain ([history] of surgical intervention), diabetes type 2 (uncontrolled), diabetic neuropathy, hypertension (poorly controlled)")); (2) glucose reading showing poor control of his diabetes, (*see* [Filing No. 28-1 at 18-24](#)); and (3) a partial notice from the State of Indiana that he had been found medically frail, (*see* [Filing No. 33-1 at 3-7](#)). The ALJ addressed the full notice in the decision, which did not provide any necessary substantiation as to the basis of the determination that would be relevant to the ALJ's disability determination. ([Filing No. 13-2 at 31](#).) SSR 06-03p (S.S.A. Aug. 9, 2006), 2006 WL 2329939, at *6, makes clear that the SSA is not bound by disability determinations made by other governmental agencies, but rather makes the determination based on its own legal guidance. Michael G. also submitted an FMLA certification to his wife's employer dated February 16, 2018 that she has been helping him with "all" his activities of daily living since December 9, 2015. ([Filing No. 22-1 at 17](#).) The record before the ALJ included a functional report from Michael G. that he received daily assistance from his wife, despite her not living with him. ([Filing No. 13-6 at 67](#).) The ALJ acknowledged that Michael G. alleged engaging in limited activities of daily living but found it difficult to attribute the degree of limitation to his medical condition "in view of the relatively weak medical evidence and other factors discussed in this decision." ([Filing No. 13-2 at 28-29](#).) This cumulative evidence is not considered new under the Act.

The Court does not find that any of the evidence meets the requirements of the Act as new and material, such that it would be necessary for the Court to remand the claim to the SSA to consider the evidence. To the extent that the evidence reflects his functioning after the period covered by the ALJ's decision, Michael G. may opt to file another application for benefits to have that evidence properly considered by the SSA.

## V. CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision. The final decision of the Commissioner is **AFFIRMED**. Michael G.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date: 7/29/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael G.
275 Woodridge Drive
Charlestown, Indiana 47111

Regina S. Edwards
UNITED STATES ATTORNEY'S OFFICE - Louisville
717 West Broadway
Louisville, Kentucky 40202

Catherine L. Gibbons
SOCIAL SECURITY ADMINISTRATION
catherine.gibbons@ssa.gov

L. Jay Gilbert
UNITED STATES ATTORNEY'S OFFICE - Louisville
717 West Broadway
Louisville, Kentucky 40202

Jean Marie Godfrey
SOCIAL SECURITY ADMINISTRATION
jean.m.godfrey@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov